UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| KEYBANK, N.A., | ) | |
| | ) | Civil No. 12-49-GFVT |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| RANDALL T. HARTMANN, and | ) | **&** |
| EVONNE D. HARTMANN, | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The economic downturn of 2008 and its aftermath impacted nearly every American in some way.  Homes and jobs were lost by some.  For others, businesses went under.  Across a large swath of the United States, people spent less on non-essential items.  What constitutes a non-essential item is inexact, but almost everyone would agree that luxury yachts fall into that category.  A dealer in luxury yachts, then, might be among the first to feel the effects of a shrinking economy.  In the case now before the Court, it appears that is exactly what happened.

Defendants Randall Hartmann and Evonne Hartmann were members of Lake Cumberland Marine, LLC (LCM), as well as employees, when LCM sought bankruptcy protection.  During the bankruptcy process, LCM agreed with KeyBank that it was unable to repay all the money loaned to it.  KeyBank, consequently, instituted this proceeding to enforce guaranties each Defendant previously provided in support of LCM's loan.  Presently before the Court is

KeyBank's Motion for Summary Judgment against both Defendants. For the reasons outlined below, KeyBank's motion will be DENIED.

# I

## A

In 2005, KeyBank entered into financing agreements with each Defendant and LCM. [R. 14-3 at 6-7.] Together, the Defendants controlled LCM: Evonne Hartmann was identified as the owner of all of LCM's stock, and Randall Hartmann was listed as LCM's managing member. [R. 1-2 at 48.] KeyBank's agreement with LCM, as amended in 2006, was a demand floor plan line of credit and security agreement,[1] which was guaranteed by Defendants. [*Id*.; R. 14-1 at 9-13 (Randall Hartmann's and Evonne Hartman's individual guaranties).] In exchange for KeyBank's financing, LCM granted a security interest in a broad array of assets. [*Id*. at 7-8.] KeyBank secured its interests in those assets by filing a Uniform Commercial Code (UCC)-1 Financing Statement with the Kentucky Secretary of State. [R. 14-2 at 97.]

LCM reportedly stopped making interest payments on its debt in September 2008, and by June 2009, principal payments had ceased too. [R. 14-3 at 8.] A voluntary bankruptcy petition followed in July 2009, [R. 14-2 at 5] which included a debt totaling $2,400,711.14 owed to KeyBank [*Id*. at 51]. After KeyBank disposed of LCM's assets that it controlled, a balance of $1,261,190.13 remained. [R. 14-1 at 38.] Negotiations took place about that debt, and on November 5, 2010, LCM and KeyBank agreed that $1,104,989.86 was outstanding. [R. 14-2 at

---

[1] "Floor plan financing is a revolving line of credit wherein loans are made against" specific pieces of collateral. *United States v. May*, 2012 WL 4069585, at *1 n.1 (6th Cir. Sept. 17, 2012) (quoting another source). "When each piece of collateral is sold by the dealer, the loan advance against that collateral is repaid." *Id*. The parties' agreement

104.] This agreed amount was approved by the Eastern District of Kentucky Bankruptcy Court and an agreed order was filed in the record. [*Id*.]

Subsequently, KeyBank began to pursue the remaining amount from the Hartmanns based on their guaranties. The Hartmanns contested KeyBank's claim, and this Motion for Summary Judgment resulted.

**B**

This action is in federal court on the basis of diversity jurisdiction, 28 U.S.C. § 1332. Summary judgment is appropriate where "the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corp. of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Stated otherwise, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its

---

aligns with that definition. [*See* R. 14-2 at 88; *see also* R. 14-2 at 75-98 (including both the most recent iteration of the agreement and a previous version).]

burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate there is a genuine issue. *Hall Holding*, 285 F.3d at 424 (citing *Celotex Corp.*, 477 U.S. at 324). In applying the summary judgment standard, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing *Liberty Lobby*, 477 U.S. at 255).

## II

KeyBank presents two arguments in support of its motion. First, collateral estoppel should be utilized to prevent Defendants from challenging the amount owed. Second, Defendants' breached their guaranties by refusing to pay the debt LCM agreed it owed.

### A

Collateral estoppel exists to enable courts to act as final arbiters of disputes. This doctrine ensures that a "right, question, or fact distinctly put in issue, and directly determined by a court of competent jurisdiction" cannot be re-litigated in a subsequent suit. *S. Pac. R.R. Co. v. United States*, 168 U.S. 1, 27 (1897). Under Kentucky law, *see Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508-09 (2001), collateral estoppel, also known as issue preclusion, consists of five elements:

> (1) at least one party to be bound in the second case must have been a party in the first case; (2) the issue in the second case must be the same as the issue in the first case; (3) the issue must have been actually litigated; (4) the issue was actually decided in that action; and (5) the decision on the issue in the prior action must have been necessary to the court's judgment and adverse to the party to be bound.

*Miller v. Admin. Office of the Courts*, 361 S.W.3d 867, 872 (Ky. 2011) (internal quotation marks omitted) (quoting another source).  Because KeyBank has not carried its burden of proving that all of those elements were met, *Benton v. Crittenden*, 14 S.W.3d 1, 5 (Ky. 1999) (citing *Montana v. United States*, 440 U.S. 147, 153 (1979), the Court rules that collateral estoppel is inapplicable.

LCM and KeyBank reached an agreement that $1,104,989.86 remained unpaid after KeyBank sold LCM's assets.  The bankruptcy court approved that agreement, which furthered LCM's plan for reorganization.  This plan involved multiple creditors and millions of dollars; myriad issues, in other words, appear to have been involved in this case.

Kentucky's highest court has favorably cited the *Restatement (Second) of Judgments* when discussing issue preclusion. *See Yeoman v. Kentucky*, 983 S.W.2d 459, 465 (Ky. 1998); *see also Trover v. Kluger*, 2007 WL 528419, at *4-5 (W.D. Ky. Feb. 14, 2007).  Section 27, comment d, states that issues addressed in an agreed order are generally considered unlitigated, and therefore nonpreclusive.  However, that presumption can be overcome by an agreement evincing contrary intent. *Id.*; *see also Burgess v. Consider H. Willett, Inc.*, 225 S.W.2d 315, 317 (Ky. 1949) ("It seems to be generally accepted that a judgment by agreement or consent, since no inquiries are made into the merits or equities of the case by the court, constitutes only the agreement of the parties.").

The two-page agreed order entered by the bankruptcy court provides no indication it was actually litigated.  Instead, it looks much more like an agreement reached between two parties, and consented to by the Committee of Unsecured Creditors, in order to avoid additional

argument. [R. 14-2 at 104.] This is much more akin to resolution than decision. *See Trover*, 2007 WL 528419, at \*5. Defendants asserted that basic argument—in agreeing on an amount, "[t]here was no evidentiary hearing, no dispositive motion practice, or any other actual proof taken on the subject matter [R. 17 at 11]—and KeyBank did not present any contrary evidence. [2]

The extent to which the agreement was meant to be preclusive is also undermined by the language of paragraph three of the order: "KeyBank and Debtor agree that this order shall not affect the rights of any other party in interest as may exist under applicable law, to the extent such rights exist, concerning the KeyBank claim." [R. 14-2 at 105.] A narrow reading, thus, appears to have been the parties' intent when they filed this order. The Court will not disturb the parties' intent, evidenced by the plain language they selected.

**B**

After LCM and KeyBank's agreed order was filed, KeyBank unsuccessfully sought payment for the deficient amount from Defendants. KeyBank based its demands on Defendants' personal guaranties. [R. 14-1 at 9-10, 12-13.] When KeyBank's extrajudicial efforts failed, it filed a claim for breach of contract; summary judgment is now sought.

The guaranties in their simplest terms provided that each Defendant "unconditionally and absolutely guaranties the punctual and full payment when due, by acceleration or otherwise, of all such credit and/or obligations" incurred by LCM. [*Id*. at 9, 12.] Among the provisions in the contract, Defendants agreed to "waive all defenses, legal or equitable, otherwise available" [*Id*. at

---

[2] Defendants' counsel made the unsupported statement that LCM never contested KeyBank's Proof of Claim because whether it "was $1 million or $100 million only had the practical effect of diluting the recovery pool available to unsecured creditors." The Court notes that if indeed the agreed upon amount was reached in such a

9, 12 para. 6] and "all rights it may have at law or in equity." [*Id*. at 10, 13 para. 10.] Additionally, "all settlements, compromises, compositions, accounts stated and agreed balances with regard to any of the liabilities made in good faith between [KeyBank and LCM] shall be binding" upon Defendants [*Id*. at 9, 12 para. 4].

Defendants' counterargument is that Article 9 of the UCC, as statutorily enacted, governs the guaranties. Article 9 prohibits certain waivers of rights from being enforced against a debtor. Defendants allege that KeyBank is attempting to enforce illegal waivers upon them, most notably by refusing to disclose information about the commercial reasonableness of the disposition of LCM's collateral. [R. 17 at 4.] Consequently, summary judgment is premature until Defendants are provided the opportunity to explore and exercise their rights. [*Id.* at 2-7.]

As an initial matter, Ohio law was identified in the agreement as the law that should be utilized. [*Id*. at 10, 13 para. 11.] The forum state's choice of law rules apply when a choice of law issue arises for a court sitting in diversity. *Harris Corp. v. Comair, Inc.*, 712 F.2d 1069, 1071 (6th Cir. 1982) (citing *Klaxon Co. v. Stentor Elec. Mfg.*, 313 U.S. 487 (1941)). The Sixth Circuit has explained that Kentucky would honor a choice of law provision in a contract unless "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice," or "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest." *Moses v. Baker*, 798 F. Supp. 2d 863, 866 n.1 (E.D. Ky. 2011) (citing *Wallace Hardware Co. v. Abrams*, 223 F.3d 382, 398 (6th Cir. 2000)). The latter provision is not implicated here, and Ohio is the

---

reckless manner—which is highly unlikely, especially because the unsecured creditors agreed—the persuasiveness of Defendants' counsel's various arguments in this matter must be seriously questioned.

principal place of business for KeyBank, providing a reasonable basis for selection of Ohio law.

The next issue is whether Article 9, codified at Ohio Rev. Code (ORC) § 1309, is indeed applicable to the Hartmanns' guaranties. ORC § 1309.102(59)(a) defines an obligor:

> a person who, with respect to an obligation secured by a security interest in . . . the collateral, (i) owes payment or other performance of the obligation, (ii) has provided property other than the collateral to secure payment or other performance of the obligation, or (iii) is otherwise accountable in whole or in part for payment or other performance of the obligation.

An individual who obtains the title of obligor is then entitled to the rights delineated in § 1309.602—rights which may not be waived or varied. KeyBank acknowledged that it had a perfected security interest in a litany of LCM's assets. [R. 14-3 at 8.] The Hartmanns' guaranties indicate they are each individually responsible for paying for LCM's obligations. Consequently, they satisfy § 1309.102(59)(a)(iii)'s definition of obligor, and the waivers KeyBank cites are ineffective.

While trying to avoid being overly pedantic, the Court's decision to deny KeyBank's motion rests on the following. "The elements for a breach of contract are that a plaintiff must demonstrate by a preponderance of the evidence (1) that a contract existed, (2) that the plaintiff fulfilled his obligations, (3) that the defendant failed to fulfill his obligations, and (4) that damages resulted from this failure." *Telxon Corp. v. Smart Media of Delaware, Inc.*, 2005 WL 2292800, at *20 (Ohio Ct. App. Sept. 21, 2005) (citation omitted). ORC § 1309 provides a superstructure for this breach analysis, and it clearly states that KeyBank has yet to fulfill its obligations, as Defendants' Response explains [R. 17 at 4-5].

In brief, § 1309.602(G) states that parties cannot waive the requirement under § 1309.610

8

to dispose of collateral in a commercially reasonable manner. Section 1309.626 provides remedies if commercial reasonableness was not used, and this provision also may not be waived pursuant to § 1309.602(M). Section 1309.626(B) also states that if proper disposition is questioned, "the secured party has the burden of establishing that the . . . disposition . . . was conducted in accordance" with §§ 1309.601-.628. *See also Commercial Sav. Bank v. Fronks Serv. Ctr.*, 2008 WL 2230067 (Ohio Ct. App. June 2, 2008). Defendants raised the issue of commercial reasonableness in their Answer, [R. 11 at 1] and evidence in support of KeyBank's disposition has not been brought to the Court's attention. This total lack of evidence leaves a genuine issue of a material fact about whether KeyBank has fulfilled its obligations under the contract.

<h3 style="text-align:center">C</h3>

KeyBank also asked the Court to strike Defendants' affirmative defenses. Federal Rule of Civil Procedure 12(f) explains that this uncommon remedy should be utilized when a pleading contains "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

KeyBank's motion hangs on a thin reed, hardly deserving of mention. This "drastic remedy" should only be used "for the purposes of justice." *Paducah River Painting, Inc. v. McNational, Inc.*, 2011 WL 5525938, at *1 (W.D. Ky. Nov. 14, 2011) (quoting *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953)). Moreover, "[t]he motion should be granted only when the pleading to be stricken has no possible relation to the controversy." *Id*. (quoting *Brown & Williamson*, 201 F.2d at 822). These motions should be

disfavored "because they potentially serve only to cause delay." *HCRI TRS Acquirer, LLC v. Iwer*, 708 F. Supp. 2d 687, 689 (N.D. Ohio 2010) (quoting another source).

Defendants' asserted three affirmative defenses. [R. 11 at 1-2.] The first defense is that the Complaint fails to state a cause of action. [*Id.* at 1.] This affirmative defense simply mirrors the language of Rule 12(b)(6)—to which Rule 12(c) is analogous except for the timing of when such a motion can be filed. *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006). Thus, whether this defense is stricken or not will have no impact on this action. Due to the ruling about the applicability of ORC § 1309, KeyBank's argument as to the second defense has already been functionally denied. [*See* R. 11 at 1.] Defendants' third affirmative defense cites lack of compliance with Kentucky law, and the Court has determined that the contracts between the Hartmanns and KeyBank are properly governed by Ohio law. [R. 11 at 2.] Beyond that ruling, it is premature and unnecessary to do anything further.

### III

Accordingly, and the Court being sufficiently advised, it is **HEREBY ORDERED** that KeyBank's Motion for Summary Judgment [R. 14] is **DENIED**.[3]

---

[3] KeyBank raises arguments that judicial estoppel and equitable estoppel justify ruling in its favor for the first time in its Reply. [R. 18 at 10-13.] As has been well-established in numerous courts over many years, raising an argument in a reply brief does not properly place the matter before a court. *See, e.g.*, *Aetna Cas. & Sur. Co. v. Leahey Const. Co.*, 219 F.3d 519, 545 (6th Cir. 2000) (citing *United States v. Jerkins*, 871 F.2d 598, 602 n.3 (6th Cir. 1989 ("It is impermissible to mention an issue for the first time in a reply brief because the [non-movant] then has no opportunity to respond.")); *see also Keys v. Dart Container Corp. of Ky.*, 2012 WL 2681461, at *6 (W.D. Ky. July 6, 2012); *EP Acquisition Corp. v. MaxxTrade, Inc.*, 2011 WL 4102114, at *5 (E.D. Ky. Sept. 14, 2011); *Madison Capital Co., LLC v. Smith*, 2009 WL 1119411, at *3 (E.D. Ky. Apr. 27, 2009).

Furthermore, while the Court is grateful for KeyBank's counsel's concern that Defendants' counsel may be trying to "play fast and loose" with the Court and abusing the judicial process, [R. 18 at 17-18] the Court is far more concerned about KeyBank's counsel's failure to invoke Article 9 of the UCC. [R. 18 at 10-13.] The guaranties signed by the Hartmanns clearly fall within the ambit of Article 9, yet KeyBank's counsel failed to mention Article 9 even once in relation to the Hartmanns' guaranties.

This 27th of March, 2013.



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge