UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

|  |  |  |
|---|---|---|
| KEYBANK, N.A., | ) | |
| | ) | Civil No. 12-49-GFVT |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| RANDALL T. HARTMANN, and | ) | **&** |
| EVONNE D. HARTMANN, | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court upon the renewed Motion for Summary Judgment filed by Plaintiff, KeyBank, N.A. against Defendants Randall T. Hartmann and Evonne D. Hartmann. The Court previously denied summary judgment to KeyBank, but since that time, the parties have conducted further discovery, and KeyBank has refined its arguments in light of the Court's previous ruling. It is now apparent that no genuine factual dispute remains, and for the reasons set forth below, KeyBank's Motion for Summary Judgment is GRANTED.

**I**

**A**

Lake Cumberland Marine, LLC ("LCM"),was a retailer of and provider of related services for luxury boats. [R. 51-1 at ¶ 6.] Defendant Randall Hartmann was listed as LCM's managing member, while Defendant Evonne Hartmann was identified as the owner of all of

LCM's stock. [R. 1-2 at 48.] Plaintiff Keybank is a national banking association that entered into certain financing agreements with LCM and with the Hartmanns, beginning in 2005. [R. 51-3 at 2-5.] As amended in 2006, KeyBank's agreement with LCM consisted of a demand floor plan that included a line of credit up to ten million dollars ($10,000,000), in exchange for granting KeyBank a security interest in an extensive array of LCM's business assets.[1] [*Id*. at 3-4.] Randall and Evonne Hartmann each personally and unconditionally guaranteed all obligations of LCM to KeyBank. [R. 51-1 at ¶¶ 7-8, Ex. A & B.] KeyBank then perfected its security interests in LCM's assets by filing a Uniform Commercial Code ("UCC")-1 Financing Statement with the Kentucky Secretary of State. [R. 51-3 at 4; R. 51-1 at ¶11, Ex. D.]

LCM reportedly stopped making interest payments on its debt in September 2008, and failed to make any principal payments after June 2009. [R. 51-3 at 6.] In July 2009, LCM filed a voluntary bankruptcy petition. [*Id*.] KeyBank filed its proof of claim in the bankruptcy petition, establishing a secured claim for a debt totaling $2,400,711.14 owed to KeyBank. [*Id*. at 6]. By a subsequent agreed order, KeyBank took possession of and liquidated LCM's inventory collateral in which it held a secured interest. [*Id*.] That collateral consisted of nine luxury yachts, two of which LCM sold "out of trust" before filing for bankruptcy and did not convey any of the sale proceeds to KeyBank. [*Id*. at 7; R. 51-1, Exhs. H, K, M.] LCM sold one of the yachts shortly after filing for bankruptcy, and KeyBank recovered the proceeds from it. [R. 51-1,

---

[1] "Floor plan financing is a revolving line of credit wherein loans are made against" specific pieces of collateral. *United States v. May*, 2012 WL 4069585, at *1 n.1 (6th Cir. Sept. 17, 2012) (quoting another source). "When each piece of collateral is sold by the dealer, the loan advance against that collateral is repaid." *Id*. The parties' agreement aligns with that definition. [*See* R. 14-2 at 88; *see also* R. 14-2 at 75-98 (including both the most recent iteration of the agreement and a previous version).]

Exhs. H, Q.] KeyBank sold the six remaining yachts through third-party brokers, and recovered $1,294,250.00 in net sale proceeds, after deducting $145,250.00 in broker's fees and costs. [*Id*., Exhs. H, I, L, N-P.] After KeyBank disposed of LCM's assets that it controlled, a balance of $1,261,190.13 remained as an unsecured claim. [*Id*. at ¶ 18, Ex. G.] After further negotiations, the parties agreed that LCM owed KeyBank $1,104,989.86 in outstanding debt. [*Id*. at ¶ 19, Ex. H.] This agreed amount was approved by the Eastern District of Kentucky Bankruptcy Court, and an agreed order to that effect was filed on November 5, 2010. [*Id*.] Despite the agreement, KeyBank was unsuccessful in seeking payment for the deficient amount from the Hartmanns, pursuant to their personal guaranties. KeyBank alleges, and the Hartmanns do not deny, that since the time of the agreed order, the Hartmanns have not made any payments to KeyBank in their capacities as guarantors, and the interest on their debt has continued to accrue. [R. 51-1 at ¶¶ 36, 46-47.]

Consequently, KeyBank filed a claim in this Court for breach of contract in order to pursue the remaining amount from the Hartmanns based on their guaranties. In July 2012, KeyBank moved for summary judgment, which this Court denied. *See* Mem. Opinion & Order (March 27, 2013). [R. 38.] In denying summary judgment, the Court held that the agreed order in the bankruptcy proceeding had no preclusive effect in this lawsuit; that Ohio law governed the loan documents; that under Article 9 of the UCC, obligors cannot waive the defense of commercial reasonableness, which the Hartmanns had raised as an affirmative defense; and that there was a genuine issue of material fact concerning whether KeyBank had disposed of the collateral in a commercially reasonable manner. *Id*. Accordingly, the parties engaged in further

discovery, particularly on the issue of commercial reasonableness, and the time for discovery has now expired.

In October 2013, KeyBank renewed its motion for summary judgment on slightly different grounds. [R. 51.] Neither Randall nor Evonne Hartmann have responded to KeyBank's motion for summary judgment, and the time in which to do so has long since expired. Under the Local Rules for the Eastern District of Kentucky, "[f]ailure to timely respond to a motion may be grounds for granting the motion." LR 7.1(c); *see also Humphrey v. U.S. Attorney General's Office*, 279 Fed. App'x 328, 331 (6th Cir. 2008) (recognizing that in certain instances a party's lack of response to a motion or argument may be grounds for the district court to assume that the non-moving party waives opposition and grant the motion). However, in cases involving motions for summary judgment, a lack of response to the motion does not lessen the burden of the moving party to demonstrate the absence of a genuine issue of material fact, nor does the lack of response lessen the burden of the Court "to examine the movant's motion . . . to ensure that he has discharged that burden." *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991).

**B**

Summary judgment is appropriate where "the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corp. of the President of the Church*, 521 F. Supp.

4

2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Stated otherwise, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate there is a genuine issue of material fact in dispute. *Hall Holding*, 285 F.3d at 424 (citing *Celotex Corp.*, 477 U.S. at 324). In applying the summary judgment standard, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing *Liberty Lobby*, 477 U.S. at 255).

Here, the Hartmanns have not responded or otherwise opposed KeyBank's motion for summary judgment. Their lack of response is not necessarily grounds for the Court to automatically grant KeyBank summary judgment. Rather, in such a situation, "the court must review carefully those portions of the submitted evidence designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 410 (6th Cir. 1992). The Court, however, is not required to "*sua sponte* comb the record from the partisan perspective of an advocate for the non-moving party. Rather, in the reasoned exercise of its judgment the court may rely on the

moving party's unrebutted recitation of the evidence . . . in reaching a conclusion that certain evidence and inferences from evidence demonstrate facts which are 'uncontroverted.'" *Id*. Once the Court determines that the moving party has met its burden, then the lack of response from the non-moving party becomes fatal to its case and the Court may enter judgment in favor of the movant. *Id*.

## II

This action is in federal court on the basis of diversity jurisdiction because the Hartmanns are citizens of Kentucky, KeyBank is a citizen of Ohio, and the amount in controversy is clearly over $75,000. 28 U.S.C. § 1332(a). This Court previously concluded that Ohio law governed the parties' agreement and would accordingly be applied in this case.[2] *See* Mem. Opinion & Order [R. 38] at 7-8.

KeyBank contends that it is entitled to summary judgment because 1) there is no dispute of genuine material fact concerning LCM's default on its loan obligations or the Hartmanns' breach of their obligations as guarantors of the loans at issue; 2) there is no dispute as to KeyBank's damages; and 3) there is no dispute that KeyBank repossessed and disposed of the collateral at issue in a commercially reasonable manner as required by Article 9 of the Uniform Commercial Code. Secondly, KeyBank contends that it is entitled to recover reasonable attorneys' fees and costs associated with enforcing its rights against the Hartmanns in this matter.

---

[2] Ohio law was identified in the parties' agreement as the law that should be utilized. The Court has already found there was a reasonable basis for the selection of Ohio law, and consequently, its application in this case. *See Moses v. Baker*, 798 F. Supp. 2d 863, 866 n.1 (E.D. Ky. 2011) (citing *Wallace Hardware Co. v. Abrams*, 223 F.3d 382, 398 (6th Cir. 2000)).

# A

## 1

As explained in the Court's prior opinion, this is essentially an action for breach of contract, albeit one governed by Article 9 of the Uniform Commercial Code. As such, KeyBank must establish "by a preponderance of the evidence (1) that a contract existed, (2) that [KeyBank] fulfilled its obligations, (3) that [the Hartmanns] failed to fulfill [their] obligations, and (4) that damages resulted from this failure." *Telxon Corp. v. Smart Media of Delaware, Inc.*, 2005 WL 2292800, at *20 (Ohio Ct. App. Sept. 21, 2005) (citation omitted). As a threshold matter, no one disputes that a contract existed between KeyBank and the Hartmanns. Indeed, there is no dispute that the Hartmanns guaranteed LCM's obligations to KeyBank, or that as the primary obligor, LCM subsequently defaulted on those obligations to KeyBank.

The parties also do not dispute that the Hartmanns have failed to fulfill their obligations by paying KeyBank what LCM owes. The guaranties in their simplest terms provided that each Defendant "unconditionally and absolutely guaranties the punctual and full payment when due, by acceleration or otherwise, of all such credit and/or obligations" incurred by LCM. [R. 51-1, Exhs. A & B.] Additionally, "all settlements, compromises, compositions, accounts stated and agreed balances with regard to any of the liabilities made in good faith between [KeyBank and LCM] shall be binding" upon Defendants. [*Id*.]. This Court has previously found that the guaranty agreements signed by the Hartmanns are governed by Article 9, codified at Ohio Rev. Code (ORC) § 1309, and that the Hartmanns are each an obligor as defined by ORC § 1309.102(59)(a). *See* Mem. Opinion & Order [R. 38] at 8. An absolute and unconditional

guaranty means that the guarantor becomes "liable immediately upon default of the principal without notice," and "casts no duty upon the creditor or holder of the obligation to attempt collection from the principal debtor before looking to the guarantor." *United States v. Willis*, 593 F.2d 247, 254 (6th Cir. 1979) (internal quotations omitted). Accordingly, upon LCM's default, the Hartmanns as guarantors owed payment to KeyBank. The Hartmanns have not disputed that they owe this obligation, nor that they have thus far failed to fulfill it.

## 2

There also does not appear to be a genuine dispute as to the amount of damages sustained by KeyBank as a result of the Hartmanns' breach. The Court previously ruled that the amount of damages set by the agreed order in the bankruptcy proceeding has no preclusive effect in this lawsuit,[3] and, accordingly, KeyBank states that it is not relying on that order as the sole proof of damages. Rather, KeyBank has demonstrated its damages in this proceeding "based on the underlying loan documents, using the outstanding principal balance and accrued interest due upon LCM's bankruptcy filing, subtracting its net recovery from disposing of the collateral, and adding in additional default interest that has accrued to date." [R. 51-3 at 14.] In support of this contention, KeyBank has submitted a detailed accounting of its damages before and after it successfully repossessed and sold the collateral at issue, including detailed worksheets and calculations. [*See* R. 51-1 at ¶¶ 7-9, 11-20, 24-36, & Exhs. H-Q.] In particular, KeyBank alleges

---

[3] In its previous opinion, the Court noted that the two-page agreed order looked like an agreement reached by the parties rather than an issue that was actually litigated or determined by a court after hearing supporting evidence on the matter. Mem. Opinion & Order [R. 38] at 5-6. Moreover, the Court noted the agreement itself stated that it would "not affect the rights of any other party in interest," and concluded the parties did not intend the agreement to have preclusive effect. *Id.* at 6.

that the Hartmanns owe a total amount of $1,383,372.73. That amount includes $292,432.57 in accrued interest based on a default interest rate of 6.250% and a per diem interest of $189.40. [R. 51-3 at 15.] The Court notes in particular that the Hartmanns have not disputed the amount of damages, either in this motion for summary judgment or previously, and the Court sees no reason to question the calculations KeyBank has submitted. The Hartmanns' only contention and sole defense[4] is the issue of commercial reasonableness, which is discussed below.

### 3

The only apparent issue for the Court to decide in this case is whether KeyBank has fulfilled its obligations under the contract – more specifically, whether KeyBank has disposed of the collateral in a commercially reasonable manner as required by Article 9 of UCC. At the outset, the Court notes once again that the Hartmanns have not responded to KeyBank's arguments, and that in analyzing this issue, the Court has considered the arguments presented by KeyBank in light of the legal standard and in light of the affirmative defense the Hartmanns previously raised, which the Court found constituted a genuine factual dispute at the time of the prior summary judgment motion. As will be explained below, the concerns which the Court expressed when ruling on the previous summary judgment motion have been adequately addressed by KeyBank, and based on the facts presented at this time, the Court finds that there is no longer any dispute as to a material fact.

The UCC, as codified by Ohio law, requires a secured party to ensure that "[e]very aspect of a disposition of collateral, including the method, manner, time, place, and other terms must be

---

[4] This defense is one that was raised previously in this litigation. The Hartmanns have not responded to the motion presently before the Court, nor have they raised any specific defense to KeyBank's renewed motion.

commercially reasonable." ORC §1309.610(B). However, as long as the disposition is commercially reasonable, "a secured party may dispose of collateral by public or private proceedings, by one or more contracts, as a unit or in parcels, at any time and place, and on any terms." *Id*. When the commercial reasonableness of a sale is disputed, the party seeking affirmative relief, which is usually the secured party, "has the burden of establishing that the . . . disposition . . . was conducted in accordance with" Sections 1309.601—1309.628. ORC §1309.626(B); *Ramsey v. Ernoko, Inc*., 74 Ohio App. 3d 749, 755 (1991). According to statute, a disposition of collateral "is made in a commercially reasonable manner if the disposition is made: (1) [i]n the usual manner on any recognized market; (2) [a]t the price current in any recognized market at the time of disposition; or (3) [o]therwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition." ORC §1309.627(B). Whether the disposition is commercially reasonable "will turn upon all the facts in a particular case. Price alone is not the determinative factor." *Huntington Nat'l Bank v. Elkins*, 559 N.E.2d 456, 458 (1990). The primary focus of a court in analyzing commercial reasonableness must be the procedures used, including "the method, manner, time, place and terms." *Id*.

      Here, the Hartmanns raised the issue of commercial reasonableness in their Answer, [R. 11 at 1] and, when denying KeyBank's initial motion for summary judgment, the Court found that a factual dispute on the issue of commercial reasonableness remained, largely because KeyBank had produced no evidence to establish that its disposition of the yachts was commercially reasonable. *See* Mem. Opinion & Order [R. 38] at 9. Now, however, KeyBank

has presented a detailed explanation with supporting documentation to establish the commercial reasonableness of its disposition, and the Hartmanns have offered nothing to refute it.

KeyBank apparently sold the yachts through "a series of private sales to third party purchasers, using the services of boat brokers whom it deemed reliable and trustworthy." [R. 51-3 at 17.] According to KeyBank, LCM initially offered to broker a sale of six of the yachts to an "unidentified purchaser" in exchange for an 8% commission. [*Id.*; R. 51-1 at ¶¶25, 41.] KeyBank, however, declined LCM's offer primarily because KeyBank did not think LCM was trustworthy or reliable. [R. 51-3 at 17.] Specifically, LCM had sold some of the collateral out of trust two months before filing for bankruptcy, LCM did not identify who the purchaser was, and LCM's demand for a broker fee violated the Stay Relief Order in the bankruptcy proceeding. [*Id.* at 17-18; R. 51-1, Exhs. R and G.] KeyBank therefore chose to sell the collateral by using different brokers, and consequently obtained $85,430.09 more than what LCM offered to sell the yachts for. [R. 51-3 at 17-18; R. 51-1, Ex. H.] KeyBank thus used the same manner of selling the collateral that LCM had proposed,[5] except for using different brokers who KeyBank considered to be more reliable. This assumption is supported by the fact that KeyBank was able to obtain a better price for the collateral than LCM would have obtained had KeyBank used the method LCM proposed.

The Hartmanns have not submitted any evidence that would lead the Court to believe that KeyBank did not dispose of the yachts in a commercially reasonable manner. In fact, since the

---

[5] Because Mr. Hartmann purports to be "one of the industry's leading salesman [sic] and authorities" on luxury yachts, it would appear that using the method and manner of disposition that he proposed likely would be considered "in conformity with reasonable commercial practices among dealers in" luxury yachts, thus satisfying the statutory standard for commercially reasonable disposition. *See* ORC §1309.627(B)(3).

11

Court's last ruling on summary judgment, KeyBank has conducted further discovery in which it sent the Hartmanns several requests for admissions concerning this point. In response, Evonne Hartmann has admitted that "LCM's proposal was commercially reasonable with respect to the market conditions at that time, the type of boats to be sold, and the anticipated recovery for KeyBank." [R. 51-2, Miller Cert., Exhs. H, J.] Randall Hartmann has failed to respond to KeyBank's request, [*Id*. at ¶¶ 12-13, 15, 17, Exhs. E, I] and his lack of response can be deemed an admission under Federal Rule of Civil Procedure 36(b).[6] Because LCM's proposed method for disposition was commercially reasonable, and because KeyBank has demonstrated that it used the same method as LCM's proposal but with different brokers, there is no genuine dispute that KeyBank's disposition of the yachts was commercially reasonable.

The secured party also is obligated "to use its best efforts to maximize the price for the collateral and to have reasonable regard for the debtor's interests." *Huntington Nat'l Bank*, 559 N.E.2d at 459. Here, the only objection the Hartmanns raised about the disposition of the yachts was that KeyBank did not utilize LCM's proposal and allow LCM to broker the proposed sale.[7] KeyBank has explained, however, that it considered LCM to be "untrustworthy and unreliable"

---

[6] "Matters admitted on the basis of a party failing to respond to a request for admission within the prescribed time period are, for evidentiary purposes in that case, deemed conclusively established." *In re Ottawa River Steel*, 324 B.R. 636, 638 (Bankr. N.D. Ohio 2005). The Court recognizes, however, that Fed. R. Civ. P. 36(b), and subsequent caselaw interpreting it, authorize courts to allow a longer period of time for parties to answer requests in order to prevent prejudice from deeming their failure to respond as an admission, and that courts may allow a party to withdraw or amend such an admission when a party makes a motion to do so. Mr. Hartmann, however, has made no such request to the Court in this case. *See, e.g., Dupuis v. City of Hamtramck*, 2008 WL 4615655, at *1 (E.D. Mich. Oct. 16, 2008). Thus, absent any motion making a request to the contrary, the Court will deem Mr. Hartmann's lack of response an admission.

[7] The Court again notes that this objection was raised in the Answer and in the Hartmanns' response to the previous summary judgment motion [R.17 at 4-5], but the Hartmanns and have not actually raised this objection, nor any other, in response to the motion currently before the Court.

based on the prior out-of-trust sales, and KeyBank legitimately wanted to "maximize the price for the collateral" as required. *See id.* The commercial reasonableness of KeyBank's chosen method and chosen brokers is even further supported by the fact that KeyBank obtained a significantly higher price for the collateral than it would have had it used LCM's proposal. Although "price alone is not conclusively determinative of 'commercial reasonableness,'" the actual price obtained for the collateral "is relevant to a consideration of reasonableness." *Columbus Mtge., Inc. v. Morton*, 2007 WL 1748142, at *10 (Ohio Ct. App. June 19, 2007) (granting summary judgment to secured party because no genuine issue of material fact existed regarding commercial reasonableness where the secured party obtained a price for the collateral that was the same or higher than the price that would have been obtained by using the method of disposition preferred by the debtor). Here, as in *Columbus Mortgage*, the price that KeyBank obtained "met or exceeded" the price that would have been obtained had the secured party disposed of the collateral in the manner that LCM preferred. *Id.*, at *11.

Thus, based on the facts presented, the Court finds that KeyBank disposed of the yachts in a commercially reasonable manner by using a method of sale commonly used by the industry, and by attempting to obtain the best price possible and avoid additional loss from LCM's dubious proposal. *See, e.g. First Nat'l Bank of Cincinnati v. Cianelli*, 73 Ohio App. 3d 781, 796 (1991) (finding "there was competent evidence to support" the conclusion that the sale of the collateral was commercially reasonable because "[t]here was evidence showing that [the secured party] acted in good faith in accordance with the terms of [the agreement] and that it actually sought to avoid loss"). The Court further notes that the Hartmanns have not presented any

evidence to contradict this finding. As explained above, once the party moving for summary judgment has satisfied its burden of showing "an absence of evidence to support the non-moving party's case," *Celotex*, 477 U.S. at 325, the burden shifts to the non-moving party to come forward with specific facts demonstrating the existence of a genuine dispute. *Hall Holding*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324). Clearly, since the Hartmanns have not responded to KeyBank's motion, they have not met their burden of proof. The Court therefore finds that no genuine factual dispute remains concerning the debt owed by the Hartmanns to KeyBank.

**B**

The only remaining issue in this case is whether KeyBank is entitled to recover its reasonable attorneys' fees and costs. Ohio law generally does not permit the prevailing party in a civil action to recover attorneys' fees as part of the litigation costs. *Wilborn v. Bank One Corp.*, 906 N.E.2d 396, 400 (Ohio 2009). The exceptions to this rule, however, include when "a statute or enforceable contract specifically provides for the losing party to pay the prevailing party's attorney fees." *Id.*; *see also Fabrication Grp., LLC v. Willowrick Partners*, LLC, 2012 WL 4481309, at *7 (Ohio Ct. App. Sep. 28, 2012) (explaining that exceptions to the general rule against fee-shifting include "(1) if there has been a finding of bad faith; (2) if a statute expressly provides that the prevailing party may recover attorney fees; or (3) if the parties' contract provides for fee-shifting."). In such cases, the court can enforce a contractual right to attorneys' fees "so long as the fees awarded are fair, just, and reasonable"; and when the contract is not one of adhesion in which "a party with little or no bargaining power has no realistic choice as to terms." *Id*. at 401 (internal citations omitted); *see also Andersons, Inc. v. Lafarge N. Am., Inc.*,

14

503 F. App'x 314, 322 (6th Cir. 2012) (quoting *Wilborn*, 906 N.E.2d at 400).

Here, both the contract at issue and the applicable statute provide for an award of attorneys' fees in this situation. As an initial matter, a contract should be construed as a whole, and, if reasonable, courts should give effect to each provision of the contract. *Foster Wheeler Enviresponse, Inc. v, Franklin Cnty. Convention Facilities Auth.*, 678 N.E.2d 519, 526 (1997). In doing so, the primary goal of contract interpretation is to determine and effectuate the intent of the parties. *Id*. Ordinary words in the contract "will be given their ordinary meaning unless manifest absurdity results," or unless the contract as a whole clearly implies a different meaning. *Id*. (quoting *Alexander v. Buckeye Pipe Line Co*. 374 N.E.2d 146 (1978)). When several documents are "executed as part of the same transaction, [they] will be read as a whole, and the intent of each part will be gathered from a consideration of the whole." *Id*. (citations omitted).

In the contract at issue, the Floor Plan Agreement includes a provision in which LCM clearly agreed to "reimburse [KeyBank] for all reasonable out-of-pocket expenses of every nature including, but not limited to, reasonable attorneys' fees, which [KeyBank] may incur in connection with this Agreement, the Note and any Related Loan Documents or the collection of the indebtedness created under such documents." [R. 51-1, Ex. C at §4(g).] Similarly, the Floor Plan Line of Credit Note provided that LCM is required to "promptly reimburse [KeyBank] for all costs and expenses, including attorney's fees, incurred by [KeyBank] in connection with . . . any collection proceedings as a result of nonpayment of this Note." [R. 51-1, Ex. E.]. Both of these documents listed LCM as the "Debtor" and were signed by Randall Hartmann. Randall and Evonne Hartmann each signed a Continuing Guaranty in which they "unconditionally and

15

absolutely guarant[eed] the punctual and full payment of all LCM's debts and obligations to KeyBank "when due, by acceleration or otherwise." [R. 51-1, Exhs. A-B.]. Thus, the agreements expressly provide that LCM owes KeyBank reasonable attorneys' fees incurred in the process of enforcing the loan obligations, and the Hartmanns expressly contracted with KeyBank to pay all of LCM's debts. The Hartmanns clearly signed as guarantors of LCM's loan, and they have not disputed their responsibility for all of LCM's debts, including attorneys' fees. There is also nothing in the contracts that would lead the Court to believe this interpretation was absurd or was not the intent of the parties. *See Foster Wheeler Enviresponse, Inc.,* 678 N.E.2d at 526.

Moreover, the Hartmanns were clearly not unsophisticated parties with "little or no bargaining power" in the manner contemplated by the *Wilborn* court. 906 N.E.2d at 400; *see also Saad v. GE HFS Holdings, Inc.*, 366 F. App'x 593, 605 (6th Cir. 2010) (holding in a similar case concerning a contractual provision for awarding attorneys' fees in a debt collection suit that "[b]ecause the parties were not of unequal bargaining power and Ohio law expressly allows for attorneys' fees, . . . the attorneys' fees provisions at issue were not invalid as contrary to Ohio public policy.").

Additionally, Ohio statute specifically provides for the enforceability of such contract provisions in the context of security agreements, subject to certain requirements. *See* ORC § 1319.02. The Ohio Revised Code § 1319.02, formerly designated under R.C. § 1301.21, permits the recovery of reasonable attorneys' fees where "(1) the parties have entered into a contract of indebtedness, (2) the contract of indebtedness includes a commitment to pay attorneys' fees, 3)

the contract is enforced through judicial proceedings or otherwise after maturity of the debt, (4) the total amount owed on the contract at the time such contract was entered into exceeds $100,000, and (5) the obligation constitutes a reasonable amount." *Saad v. GE HFS Holdings, Inc.*, 366 F. App'x 593, 605 (6th Cir. 2010) (quoting ORC § 1301.21(B)-(D))[8]; *Columbus Truck & Equip. Co. Inc. v. L.O.G. Transp., Inc.*, 2013 WL 3341175, at *2 (Ohio Ct. App. June 27, 2013) (quoting *Saad*, 366 F. App'x at 605). Here, there is no dispute that the parties entered into a contract of indebtedness, that the loan agreements included a commitment to pay attorneys' fees, nor that the total amount owed far exceeded $100,000. The contract has been enforced after the debt's maturity both through bankruptcy court, and now through this Court. Thus, the agreement to pay attorneys' fees should be enforced as long as it is reasonable.

When determining whether the commitment to pay attorneys' fees is reasonable, "all relevant factors shall be considered"; the amounts "are deemed reasonable" if "based upon a specific percentage of the total principal, interest, and other charges owed," or, if not based on a specific percentage, "an amount equal to the attorneys' fees customarily charged by the attorney[/s] rendering the services." ORC § 1319.02 (D). The court in *Saad v. GE HFS Holdings* held that this statute places the burden on the indebted party to demonstrate that the fees are not reasonable – if not based on a specific percentage, the debtor must show the fees are in excess of those "customarily charged." *Saad*, 366 F. App'x at 607. Because the debtors in that case "failed to satisfy their evidentiary burden" of demonstrating the unreasonableness of the fees, the Sixth Circuit affirmed the district court's award of attorneys' fees and costs. *Id*.

---

[8] The Credit portion of the Ohio Revised Code explains that § 1301.21 was replaced in June 2011, with § 1319.02,

Here, the agreements provided for reimbursement of "reasonable" attorneys' fees, and KeyBank has only requested "its *reasonable* attorney's fees and costs" in an amount to be determined by separate application. [R. 51-3 at 23 (emphasis added).] At this stage, the Court has not been presented with a specific amount of attorneys' fees but has only been asked to determine whether KeyBank may collect reasonable attorneys' fees and costs associated with this litigation. The Court finds from the above discussion that the law clearly permits recovery of attorneys' fees in debt collection suits such as this, and the Hartmanns have presented no evidence to the contrary. At this point, the Hartmanns have the burden of demonstrating that the requested fees are unreasonable, and, like the indebted party in *Saad v. GE HFS Holdings, Inc.*, the Hartmanns have presented no evidence to dispute either the award or the amount of fees. Indeed, as evidenced by the Hartmanns' complete lack of response to KeyBank's motion, they have not disputed the issue at all. Accordingly, the Court finds that KeyBank is entitled to recover its *reasonable* attorneys' fees and costs, in an amount to be determined by further Order upon submission of a fee application by KeyBank.

### III

In conclusion, the Court finds that even when construing all reasonable inferences in favor of the Hartmanns, KeyBank has met its burden of demonstrating an absence of any genuine issue of material fact, and the burden has shifted to the Hartmanns to come forward with specific facts showing that a genuine dispute exists. *See Hall Holding*, 285 F.3d at 424 (citing *Celotex Corp.*, 477 U.S. at 324). The Hartmanns, by their complete lack of response, have failed to meet

---

but the language remains the same. The cases that KeyBank relies upon in its motion for summary judgment quote § 1301.21, but since it is now the same as § 1319.02, the Court has cited to cases referring to both sections.

this burden.  As it is required to do, the Court has determined that the law supports KeyBank's arguments, albeit while relying on KeyBank's "unrebutted recitation of the evidence," and the evidence presented "supports a conclusion that there is no genuine issue of material fact." *Guarino*, 980 F.2d at 410.  Thus, judgment should be entered in favor of KeyBank.  Accordingly, and the Court being otherwise sufficiently advised, it is **HEREBY ORDERED** as follows:

1. Plaintiff KeyBank's Renewed Motion for Summary Judgment [**R. 51**] is **GRANTED**;

2. Summary Judgment is awarded in favor of KeyBank and against Randall and Evonne Hartmann, jointly and severally, in the amount of $1,383,372.73, as of October 22, 2013, plus per diem interest of $189.40 per diem from that date until entry of judgment;

3. Reasonable attorneys' fees and costs shall be awarded to KeyBank in an amount to be determined upon KeyBank's submission of a separate fee application; and

4. All other matters being settled, the Final Pretrial Conference in this case that is currently scheduled for **March 3, 2014**, and the Jury Trial scheduled for **April 7, 2014**, in **London**, Kentucky are hereby **CANCELLED**.

5. The Court will enter an appropriate Judgment contemporaneously herewith.

This 18th day of February, 2014.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge