UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 6:12-cv-49-GFVT

KEYBANK, N.A.,                                                                                PLAINTIFF,

V.                                          **MEMORANDUM OPINION
                                               & ORDER**

RANDALL T. HARTMANN, and
EVONNE D. HARTMANN,                                                       DEFENDANTS.

* * * * * * * * * *

This matter is before the Court on Plaintiff Keybank, N.A.'s ("Keybank") Amended Motion for Attorney's Fees. [R. 59]. Defendants, Randall T. and Evonne D. Hartmann, did not file a response to Keybank's motion. This matter is fully briefed and ripe for review.

## I.  BACKGROUND

The instant matter centers around Randall Hartmann's personal guarantee of all obligations of Lake Cumberland Marine, LLC ("LCM") to Keybank. LCM was a luxury boat retailer. [R. 51-1 at ¶ 6]. Mr. Hartmann was LCM's managing member, and Evonne Hartmann, Mr. Hartmann's wife, was the owner of LCM's stock. [R. 1-2 at 48]. Keybank and LCM entered into a demand floor plan agreement whereby Keybank provided LCM with a $10,000,000 line of credit in exchange for a security interest in certain business assets of LCM. [R. 51-3 at 3-4]. Additionally, Mr. and Mrs. Hartmann each personally guaranteed LCM's obligations to Keybank. [R. 51-1 at ¶¶ 7-8].

In July 2009, LCM filed a voluntary bankruptcy petition. [R. 51-3 at 6]. Following liquidation of collateral and negotiations between LCM and Keybank, the parties agreed that LCM owed Keybank $1,104,989.86 in outstanding debt. [R. 51-1 at ¶ 19]. However, despite this agreement, the Hartmanns failed to make any payments to Keybank pursuant to their personal

guaranties. [R. 51-1 at ¶¶ 36, 46-47].

Consequently, Keybank filed the instant action asserting claims against the Hartmanns sounding in breach of personal guaranty. [R. 1].  On February 18, 2014, this Court granted summary judgment in favor of Keybank. [R. 52 at 19]. The Court awarded Keybank judgment jointly and severally against the Hartmanns in the amount of $1,383,372.73 as of October 22, 2013, plus per diem interest of $189.40 from that date until entry of judgment. [R. 52 at 19].  Further, the Court determined that Keybank was entitled to reasonable attorneys' fees and costs in an amount to be determined by Keybank's submission of a separate fee application. [R. 52 at 19].

Subsequently, on March 17, 2014, Keybank filed a Motion for Counsel Fees and Costs. [R. 54].  Keybank's motion sought attorneys' fees and costs from both defendants, Mr. and Mrs. Hartmann. [R. 54].  However, unbeknownst to Keybank, on March 14, 2014, Mrs. Hartmann had filed a Chapter 7 Petition for Bankruptcy in the United States Bankruptcy Court for the Eastern District of Kentucky. [R. 55].  After it was informed of Mrs. Hartmann's bankruptcy filing, this Court denied Keybank's Motion for Counsel Fees and Costs without prejudice. [R. 58].

Now, Keybank has filed an Amended Motion for Attorney Fees. [R. 59].  This time, Keybank seeks attorneys' fees from Mr. Hartmann individually, rather than from Mr. and Mrs. Hartmann. [R. 59].  In its motion, Keybank contends that the automatic stay imposed pursuant to Mrs. Hartmann's bankruptcy does not preclude this Court from considering a grant of attorneys' fees against Mr. Hartmann alone.  The Hartmanns did not file a response to Keybank's motion.  Because the Court has already determined that Keybank is entitled to a recovery of attorneys' fees, the only issues before the Court are: (1) whether the automatic stay imposed pursuant to Mrs. Hartmann's bankruptcy precludes Keybank from seeking fees and costs from Mr. Hartmann; and (2) if Keybank

is entitled to attorneys' fees and costs from Mr. Hartmann, the amount of fees and costs Keybank may recover.

## II.  ANALYSIS

### A.  Keybank May Seek Attorneys' Fees and Costs from Mr. Hartmann

As a general rule, "neither the protections of the automatic stay during the pendency of the bankruptcy case nor the discharge injunction granted upon the completion of the Debtors' confirmed plan, extend to non-debtor co-defendants."  Saleh v. Bank of Am., N.A., 427 B.R. 415, 421 (Bankr. N.D. Ohio 2010) (citing 11 U.S.C. § 362(a) and § 524(e)).  In limited circumstances, § 1301 of the Bankruptcy Code extends a co-debtor stay to certain non-debtor individuals who share liability with a Chapter 13 debtor on a consumer debt.  Id. (citing 11 U.S.C. § 1301(a); In re McCormick, 381 B.R. 594, 598 (Bankr. S.D.N.Y. 2008)).  However,  there is no automatic stay in Chapter 7 cases for the non-debtor spouse of a bankruptcy debtor.  In re Brown, 507 B.R. 31, at *5 (B.A.P. 6th Cir. 2014).

In the present case, the Hartmanns' guaranties relate to the floor plan agreement of LCM, thus they are not consumer debt.  Furthermore, since Mrs. Hartmann filed a Chapter 7 bankruptcy petition, Mr. Hartmann, as a non-debtor spouse, is not entitled to a stay of the instant litigation.  Accordingly, this Court may proceed with a determination of the amount of attorneys' fees and costs that Mr. Hartmann is jointly and severally liable for pursuant to his personal guaranty of LCM's obligations.

### B.  Attorney's Fees and Costs

As noted above, this Court has already determined that Keybank is entitled to recover attorney's fees and costs incurred as a result of this litigation.  Given this Court's finding that Mr. Hartmann is not protected by an automatic stay, the only issue remaining before the undersigned is

the amount of fees and costs that may be recovered.

The Sixth Circuit has stated that "[i]n diversity cases, attorneys' fees are governed by state law." Hometown Folks, LLC v. S & B Wilson, Inc., 643 F.3d 520, 533 (6th Cir. 2011) (citing Poly-Flex Constr., Inc. v. Neyer, Tiseo & Hindo, Ltd., 600 F. Supp. 2d 897, 913 (W.D. Mich 2009). This includes the method used by a court to calculate the amount of an attorneys' fees award. Id. at 535; see also Mathis v. Exxon Corp., 302 F.3d 448, 461 (5th Cir. 2002) ("State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision.").

This Court has already determined that the guaranty at issue is governed by the law of Ohio. [R. 38 at 8]. "Under Ohio law, [a] trial court's determination of reasonable attorney's fees must generally begin with a calculation of the number of hours reasonably expended on the case times an hourly fee[,] also termed the lodestar figure." Columbus Truck & Equip. Co. v. L.O.G. Transp., Inc., No. 12AP-223, 2013 WL 3341175, at *4 (Ohio Ct. App. June 27, 2013) (citations and internal quotation marks omitted). Further, "[t]he party requesting attorney fees bears the burden of proving evidence of any hours worked that would be properly billed to the client, proving the attorney's hourly rate, and demonstrating that the rate is reasonable." Id. (internal quotation marks omitted). Moreover, once the requesting party has adequately proven the number of hours worked and the attorney's hourly fee, the trial court may adjust the lodestar figure based on certain factors. Id. (citation and internal quotation marks omitted).

More specifically, the trial court may use the following eight factors to aid in its determination of the reasonableness of attorney fees:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to properly perform the legal service, (2) the likelihood, if apparent to the client, that acceptance of the particular employment will preclude

other employment by the attorney, (3) the fee "customarily charged in the locality for similar legal services," (4) the amount involved, and the results obtained, (5) time limitations imposed by the client or the circumstances, (6) the nature and length of the professional relationship with the client, (7) the experience, reputation and ability of the lawyer, and (8) whether the fee is fixed or contingent.

Id.

Here, the requesting party has adequately proven the hours worked that would be properly billed to the client and the attorneys' hourly rates by submitting over eighty pages of billing documents to the Court. [R. 59-3]. The detailed documents note the amount of time spent on the matter by each attorney down to tenth-of-an-hour increments. [R. 59-3]. Additionally, Daniel C. Fleming, Managing Partner of the firm retained by Keybank, Wong Fleming, submitted a certification describing the qualifications of each attorney that performed work on the case. [R. 59-3]. Mr. Fleming's certification also stated that Wong Fleming wrote off 255.9 hours of attorneys' and support staff's time that was duplicative or excessive. [R. 59-3 at 5].

The documents submitted by Mr. Fleming reflect attorneys' fees of $39,994.50 and costs of $1,871.36 for a total of $41,856.86. [R. 59-3 at 5]. Having considered the documentation provided by Mr. Fleming in conjunction with the eight factors used by Ohio courts to determine the reasonableness of attorneys' fees, the undersigned finds no reason to vary from the amount of attorneys' fees and costs requested by Wong Fleming.

Although the claims raised by Keybank and the defenses raised by the Hartmanns in the litigation were not novel, they were of some complexity in that they required knowledge of floor plan financing, secured transactions, and contract law. Further, Mr. Fleming's certification asserts that the hourly rates of the attorneys who provided labor in successfully obtaining summary judgment are comparable to the rates for attorneys of comparable skill and expertise within the state of Ohio.

[R. 59-1 at 2-3].  Moreover, Mr. Fleming's certification adequately explains the different rates charged by attorneys at Wong Fleming based on their experience and qualifications.  Even more, Mr. Hartmann did not file a response contesting the fees and costs as presented in Keybank's motion. Thus, the Court will award the full amount of attorneys' fees and costs requested by Keybank.

### III.  CONCLUSION

For the reasons stated herein, it is HEREBY ORDERED as follows:

1.      Plaintiff Keybank's Amended Motion for Attorney Fees [R. 59] is GRANTED; and

2.      Attorneys' fees and costs in the total amount of $41,856.86 are awarded to Keybank against Defendant Randall T. Hartmann.

Signed December 30, 2014.

**Signed By:**

*Edward B. Atkins*   *EBA*

**United States Magistrate Judge**

6